2021 IL App (1st) 192582-U

No. 1-19-2582

Order filed September 9, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 5901 |
| | ) | |
| JOSEPH TOMASINO, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction is affirmed over his contention that the trial court abused its discretion in denying his request for a continuance to secure a witness, where defendant has not shown that the witness's testimony would have been material or that he was prejudiced by the denial.

¶ 2    Following a jury trial, defendant Joseph Tomasino was found guilty of possessing less than

15 grams of a controlled substance containing cocaine (720 ILCS 570/402(c) (West 2018)) and

was sentenced to two years' imprisonment. On appeal, Tomasino argues that the trial court erred in denying his request for a continuance to secure a witness. We affirm.[1]

¶ 3                                    I. JURISDICTION

¶ 4      The trial court sentenced Tomasino on November 6, 2019, and on November 20, 2019, Tomasino filed a timely notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, §6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 5                                    II. BACKGROUND

¶ 6      Tomasino was charged by indictment with multiple offenses following an April 7, 2019 incident in Chicago, Cook County, Illinois. The State proceeded on count I for armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2018)) and count IX for possessing less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2018)).

¶ 7      On May 13, 2019, Tomasino was arraigned and elected to proceed *pro se*. On the next date, Tomasino filed a document which the court treated as a motion to dismiss the charges and to suppress evidence. The court denied the motion as to the request for dismissal, and on June 14, 2019, appointed a public defender at Tomasino's request.

¶ 8      On June 17, 2019, counsel filed a motion to quash arrest and suppress evidence that alleged Tomasino was riding in a vehicle driven and owned by James Wiley when officers curbed the

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

vehicle for an expired plate. The officers recognized Tomasino from a prior arrest, ordered him out of the vehicle, and recovered suspect narcotics and a firearm.

¶ 9     At the June 24, 2019 suppression hearing, Chicago police officers Raymond Duncker and Jeffrey Weber testified that they curbed Wiley's vehicle for an expired license plate. Tomasino, the front seat passenger, moved forward towards the floor. The officers obtained Wiley's and Tomasino's identifications, and recognized Tomasino from a prior arrest. The officers ordered Wiley and Tomasino out of the vehicle and then recovered suspect narcotics from Tomasino's pants pocket, suspect narcotics packaging from Tomasino's waistband, and a firearm from underneath the front passenger seat. Duncker testified that the vehicle was not impounded, but Weber believed it was. The court denied the motion.

¶ 10    On July 12, 2019, the trial court allowed Tomasino's request to again proceed *pro se*. Tomasino filed a motion for ineffective assistance of counsel, alleging, *inter alia*, that counsel failed to subpoena Wiley as a witness at the suppression hearing. The court denied the motion.

¶ 11    On September 10, 2019, the State noted that it did not anticipate calling Wiley at trial. Tomasino filed another motion to dismiss, which the court denied. The court suggested setting the matter for trial on October 30, 2019, but Tomasino refused and requested a trial on September 20, 2019. Over Tomasino's objection, the court scheduled the trial for September 25, 2019. Tomasino again requested counsel and the court reappointed the public defender, who agreed to proceed to trial on September 25.

¶ 12    On September 25, 2019, counsel noted that Tomasino was demanding a jury trial but explained that Wiley was unavailable and requested a continuance to October 7 or 8, when Wiley could testify. Counsel proffered that Wiley would testify he did not see Tomasino with a firearm

or know the firearm was in the vehicle. The court denied the continuance because it believed Wiley's testimony was irrelevant, stating the case would go to trial, and passed the case to begin jury selection later that day. When the case was recalled, counsel answered not ready for trial and again asked for a continuance, stating that Wiley was unavailable because he had just started a new job, but was available to testify on a Tuesday or Wednesday. Counsel added that:

> "[Wiley] never saw [Tomasino] with a gun. He never saw him moving towards the floorboard, that he never knew that there was a gun in the car and that he did not make a statement to police officers which is listed in the report that he says, yeah, I didn't see him have it when he got in the car; but when he pulled up, I saw him with it.
>
> He would deny that statement given to the police officers. There is body worn camera of—a partial body warn [*sic*] camera at least of his interview on scene. It's not on the body worn camera. I am answering not ready and asking for a continuance."

¶ 13    The court denied the request because Wiley's testimony would not make it more or less likely that Tomasino possessed a firearm. The court further stated that Wiley's testimony was irrelevant and unnecessary, and noted that Tomasino previously demanded trial.

¶ 14    The parties and court then discussed severing the charges, but the court concluded it was unnecessary and trial counsel did not object. Following that discussion, counsel renewed the request for a continuance, arguing that Wiley had the best view of Tomasino when he allegedly moved towards the floor and would testify that Tomasino made no movements. The court denied the request. Counsel then requested the officers be barred from mentioning Tomasino's alleged movement at trial, which the court also denied. The jury was selected, after which counsel renewed his request. The court denied the motion again, stating that the case would not turn on whether

Tomasino moved towards the floor of the vehicle, but whether the jury believed the officers' testimony regarding the firearm's recovery. Again, the court noted Tomasino previously demanded trial and that trial was set for that day. The case was continued to the next morning, when the jury was sworn, and trial commenced.

¶ 15    At trial, officer Weber testified that, around 12:35 p.m. on April 7, 2019, he and officer Duncker were in an unmarked police vehicle when they curbed a vehicle with two occupants. As the officers activated their lights, the other vehicle's front passenger, whom Weber identified as Tomasino, moved towards the floor "as to place something on the floorboard." Weber approached Tomasino, and Duncker approached the driver. The officers obtained Tomasino's and Wiley's identifications, then met briefly behind the vehicle, before asking the occupants to exit the vehicle. As Tomasino exited, Weber observed the butt of a firearm protruding from underneath his seat. Weber said, "19 king," meaning that he would arrest Tomasino, then handcuffed him, and patted him down. From Tomasino's pocket, Weber recovered three knotted plastic bags containing a rock-like substance within a larger plastic bag. Weber then recovered the firearm, a loaded semiautomatic handgun. Weber identified a photograph of the firearm showing its serial number, FZA4254.

¶ 16    On cross-examination, Weber testified that he and Duncker, who were patrolling for gang activity, followed the vehicle for more than 10 blocks before activating their lights and curbing it for expired plates. Wiley owned and drove the vehicle. The suspect narcotics were in Tomasino's "watch pocket or change pocket." An assisting unit arrived and Duncker recovered several more bags of narcotics packaging from Tomasino's waistband. Weber retrieved the firearm. The firearm

was submitted for forensic testing, but Weber did not know the results. Weber denied seeing Tomasino handle the firearm.

¶ 17    Officer Duncker testified that, as the officers curbed the vehicle, he saw Tomasino lift himself from his seat, turn slightly, then hunch forward and reach towards the floorboard. As Tomasino and Wiley exited the vehicle, Weber said "19 king," code for an arrest. Duncker believed that "[g]iven the circumstances in the vehicle at the time," Weber meant there was a firearm in the vehicle. Duncker observed Weber recover (1) several plastic bags containing a white rock-like substance from Tomasino and (2) the firearm from beneath the passenger seat.

¶ 18    On cross-examination, Duncker confirmed that he authored the reports from the arrest, and the case incident report did not reflect that Weber said, "19 king." As Weber recovered the firearm, Duncker searched Tomasino and found additional empty baggies, but the inventory report reflected that Weber found those baggies. Duncker confirmed that the vehicle was impounded, although he testified at the suppression hearing it was not. The arrest report reflected that the firearm's serial number was FZA4257.

¶ 19    On redirect examination, Duncker testified that Weber inventoried the evidence while Duncker completed the arrest and case reports. The initial case incident report did not indicate that Weber said, "19 king," but stated that the officers "did not wish to alert [Tomasino] of their knowledge of the firearm and did not mention the weapon." Other officers remained at the stop when Duncker left, and Duncker later learned that the vehicle was impounded. On recross examination, Duncker testified that he had forgotten the vehicle was impounded, but learned that it was while reviewing his reports, although he confirmed that he also reviewed those reports before testifying at the suppression hearing.

¶ 20    The State entered stipulations that Tomasino had two prior predicate felonies which qualified him for AHC. Additionally, the parties stipulated that a forensic chemist would testify the tested portion of the suspect narcotics was positive for 0.1 grams of cocaine, and a fingerprint examiner would testify that the firearm lacked a print suitable for identification.

¶ 21    In closing argument, the State argued that the officers were credible and "the most important part" of the case was their testimony describing Tomasino's movements towards the floor as they curbed the vehicle, which showed that Tomasino hid the firearm under the seat.

¶ 22    The jury found Tomasino not guilty of AHC, but guilty of possessing a controlled substance. Tomasino filed an amended motion for a new trial, arguing, *inter alia*, that the court erred in denying his request for a continuance. At a hearing, counsel noted that he made an offer of proof regarding Wiley's testimony about Tomasino's movements in the vehicle. The court asked whether there was an offer of proof regarding what Wiley would have testified to concerning the narcotics, and defense counsel responded negatively. The court denied the motion.

¶ 23    Following a hearing, the court imposed a sentence of two years' imprisonment. Tomasino's motion to reconsider his sentence was denied.

¶ 24                                III. ANALYSIS

¶ 25    On appeal, Tomasino argues the trial court prevented him from presenting a complete defense by denying his request for a continuance to secure Wiley's testimony. Tomasino contends that counsel diligently attempted to secure Wiley's presence, and Wiley's testimony that Tomasino did not make any movements in the vehicle would have undermined the officers' credibility. Therefore, Tomasino argues, Wiley's testimony may have affected the verdict and he was prejudiced by the court's denial.

¶ 26    " 'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense,' " and is " 'a fundamental element of due process of law.' " *People v. McClain*, 343 Ill. App. 3d 1122, 1130 (2003) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)); see also *People v. Lott*, 66 Ill. 2d 290, 297 (1977) ("Speedy administration of justice is desirable, but the desire for speed must not be allowed to impinge upon the constitutional requirement of a fair opportunity to defend." (internal quotation marks omitted)). Under section 114-4 of the Code of Criminal Procedure of 1963 (Code), if more than 30 days have passed since arraignment, a defendant may file a written motion for a continuance when a material witness is unavailable and the defense would be prejudiced by the witness's absence. 725 ILCS 5/114-4(a), (b)(3) (West 2018)).

¶ 27    A refusal to grant a continuance is reviewed for an abuse of discretion and reversed only if it prejudiced the defendant and was arbitrary, fanciful, or unreasonable, or where no reasonable person would agree. *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 100; see also 725 ILCS 5/114-4(e) (West 2018) ("All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant."). When reviewing a denial of a continuance to secure a witness, we consider (1) the defendant's diligence, (2) whether defendant has shown the testimony was material and may have affected the verdict, and (3) whether defendant was prejudiced. *People v. Miles*, 2020 IL App (1st) 171258, ¶ 40. Even if a defendant is diligent in attempting to secure a witness's testimony, he must show that the testimony was material and its exclusion prejudiced him. *Id.*

¶ 28    Tomasino was arraigned on May 13, 2019 and elected to proceed *pro se*. Counsel was appointed on June 14, 2019 and filed a motion to quash arrest and suppress evidence on June 17,

2019. The motion—which reflected Tomasino was a passenger in Wiley's vehicle when he was arrested—was denied. Tomasino again elected to proceed *pro se* on July 12, 2019, and filed a motion for ineffective assistance of counsel which alleged that counsel failed to subpoena Wiley as a witness for the suppression hearing. Counsel was reappointed on September 10, 2019, and jury trial was set for September 25, 2019. The State explained that it did not anticipate calling Wiley to testify. On September 25, 2019, counsel explained that Wiley was unavailable due to a work commitment but could testify on October 7 or 8. According to counsel, Wiley would testify that he did not see Tomasino hold a firearm or know a firearm was in the vehicle, and Tomasino did not move towards the floor when the vehicle was curbed. The court denied the request, as well as counsel's renewed requests, because Wiley's testimony was irrelevant to whether Tomasino possessed a firearm and Tomasino had demanded a jury trial.

¶ 29    Initially, we note that section 114-4(a) of the Code provides that, if the defendant moves for a continuance more than 30 days after arraignment, the motion must be in writing and supported by affidavit. 725 ILCS 5/114-4(a) (West 2018). Counsel requested the continuance to call Wiley on September 25, 2019, more than 30 days after arraignment on May 13, 2019, but did not file a written motion supported by an affidavit. It was therefore within the trial court's discretion to deny the motion on that basis, and we may affirm on that ground. See *McClain*, 343 Ill. App. 3d at 1131-32 (noting that the trial court could have denied motion based on the failure to file a written motion, and appellate court could affirm on that ground, even though the trial court relied on other grounds).

¶ 30    Tomasino argues if we are to affirm because counsel failed to file a written motion or failed to diligently secure Wiley's testimony, then counsel was ineffective.

¶ 31    To demonstrate ineffective assistance, a defendant must establish that counsel's performance was deficient and prejudiced him. *People v. Cathey*, 2012 IL 111746, ¶ 23. Specifically, a defendant must show that "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). A claim of ineffectiveness fails if the defendant cannot establish prejudice. See *People v. Cherry*, 2016 IL 118728, ¶ 31 (failure to establish either prong precludes a finding of ineffectiveness). Thus, to determine whether Tomasino has established ineffective assistance, we consider whether Wiley's testimony was material and may have affected the verdict, and whether Tomasino was prejudiced by the court's denial of the continuance.

¶ 32    Following trial, the jury found Tomasino guilty of unlawfully and knowingly possessing less than 15 grams of a substance containing cocaine. The jury found Tomasino not guilty of AHC. Counsel filed an amended motion for new trial arguing that the court erred in denying the continuance to secure Wiley's testimony. In arguing his motion, counsel confirmed that Wiley's proffered testimony only concerned Tomasino's possession of a firearm, not narcotics.

¶ 33    While conceding that he was found not guilty of AHC, the only firearm-related charge, Tomasino nevertheless argues that Wiley's testimony would undermine the officers' credibility, as there was inconsistent evidence regarding whether Weber said, "19 king," and which officer recovered the extra bags on Tomasino. Wiley's proffered testimony, however, would do nothing more than impeach the officers' testimony that Tomasino bent towards the floorboard. As trial

counsel admitted when arguing the motion for new trial, Wiley's testimony would not concern the narcotics recovered from Tomasino's person.

¶ 34    Although Tomasino notes that the State called the officers' testimony that Tomasino bent towards the floor "the most important" part of the case, we disagree that Wiley's contradiction on this point would have so undermined the officers' credibility that the jury would disbelieve their testimony regarding the narcotics. The officers were impeached by the report listing an incorrect serial number for the firearm and officer Duncker's prior inconsistent statement regarding whether the vehicle was impounded. The jury nonetheless found Tomasino guilty of possessing a controlled substance. Further evidence contradicting the officers' testimony on points unrelated to the narcotics in Tomasino's pocket would not persuade the jury that the officers were wholly unbelievable. Accordingly, Wiley's testimony would not affect the jury's guilty verdict on the narcotics charge, and consequently, was immaterial.

¶ 35    Nor was Tomasino prejudiced by the court's denial of a continuance. At trial, the officers testified that Weber recovered multiple bags of suspect narcotics from Tomasino's person. A forensic scientist concluded the tested portion of suspect narcotics was positive for 0.1 grams of cocaine. As noted, Wiley's proffered testimony did not contradict the officers' testimonies that Weber recovered the narcotics from Tomasino's person. Further, while counsel proffered that Wiley would deny stating to the officers that, "I didn't see him have [the firearm] when he got in the car; but when he pulled up, I saw him with it," that statement was not adduced at trial, and Tomasino was acquitted of AHC, the offense which required the State prove he possessed a firearm (720 ILCS 5/24-1.7(a) (West 2018)).

¶ 36    Accordingly, the testimony that Tomasino sought to secure with a continuance was immaterial to the verdict, and he was not prejudiced by the court's denial of the continuance. The trial court therefore did not abuse its discretion in denying Tomasino's continuance, and Tomasino has not shown he was prejudiced either by counsel's failure to (1) file a written motion for a continuance supported by affidavit, or (2) diligently secure Wiley's testimony.

¶ 37                                            IV. CONCLUSION

¶ 38    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 39    Affirmed.